**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOLLY R., <br><br>    Plaintiff, <br><br>v. <br><br> MARTIN O'MALLEY, <br>Commissioner of the Social Security Administration, <br><br>    Defendant. | Case No. 2:23-cv-03433 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Holly R.'s ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("Commissioner"[1]) denying her application for Social Security Disability Insurance Benefits ("SSDI") under Title II of the Social Security Act ("Act"). Having considered the submissions of the parties without oral argument, for the reasons set forth below and for good cause shown, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

This case arises out of Plaintiff's challenge to the administrative decision of the Commissioner denying her application for SSDI benefits. (*See id.* at 1; ECF No. 4-2 (Transcript

---

[1] Martin O'Malley became Commissioner of the Social Security Administration ("SSA") on December 20, 2023. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted as Defendant (previously, Kilolo Kijakazi) in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

of Proceedings ("Tr.")) at 91.) On August 17, 2020, Plaintiff filed a Title II application for a period of disability and SSDI benefits. (*See* ECF No. 6 at 4.) Plaintiff alleged a disability onset date of August 20, 2019 (*see* ECF No. 11 at 4), based on adrenal lipid dystrophy, generalized anxiety disorder, a learning disorder, and OCD. (*See* Tr. at 119–20.)

The Social Security Administration ("SSA") initially denied Plaintiff's claim on December 31, 2020 (*see id.* at 92), and upon reconsideration on May 4, 2021. (*Id.*) Plaintiff filed a written request for a hearing on June 23, 2021 (*see id.*), and on October 13, 2021, Administrative Law Judge Sharon Allard ("ALJ Allard") held a hearing for Plaintiff's claim. (*See* ECF No. 11 at 4.) At the hearing, Plaintiff testified to her prior work and to her history of treatment, as well as the symptoms of her conditions, including incontinence, leg spasms, balance issues, lower body weakness, neuropathy, and sensory issues. (*See* Tr. at 129–31.) An impartial vocational expert also appeared and testified at the hearing. (*See id.* at 151–59.)

On March 29, 2022, ALJ Allard issued a decision denying Plaintiff's claim, finding Plaintiff was not disabled within the meaning of the Act. (*See* ECF No. 6 at 4.) ALJ Allard considered the entire record in making her decision. (*See* Tr. at 92, 97.) At step one, ALJ Allard found Plaintiff "has not engaged in substantial gainful activity since August 20, 2019." (*Id.* at 93.) At step two, ALJ Allard found Plaintiff had the following "severe impairments": "spine disorders including degenerative disc disease of cervical and lumbar spines (status-post laminectomy); cubital tunnel syndrome; other and unspecified arthropathies; and disorders of muscle, ligament, and fascia." (*Id.*) At step three, ALJ Allard did not find the Plaintiff to have "an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 96.) At step four, ALJ Allard found Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except lift/carry up to 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk for four hours and sit for six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs, balance on wet moving or uneven surfaces, kneel, stoop, and crouch. The claimant cannot crawl, climb ladders, ropes or scaffolds, or work around hazards, including moving mechanical parts or at unprotected heights. The claimant is able to stand and stretch for 1 to 5 minutes at the workstation after 30 minutes of sitting; is able to sit for 1 to 5 minutes at the workstation after 30 minutes of standing or walking. The claimant can engage in frequent reaching, handling, and fingering. The claimant can understand and execute simple and routine tasks.

(*Id.* at 97.) Accordingly, ALJ Allard found, based on Plaintiff's age, education, previous work experience, and RFC that she was "capable of performing past relevant work as a case aid (DOT 195.367-010[).]"[2] (*Id.*) Finally, and alternatively, at step five, ALJ Allard found "there are other jobs that exist in significant numbers in the national economy that . . . [Plaintiff] can also perform" (*id.*), including "Photo Copy Machine Operator (DOT 207.685-014[)] . . . and . . . Collator Operator (DOT 208.685-010[).]" (*Id.* at 102.)

Plaintiff submitted a Request for Review of the Hearing Decision to the Appeals Council on May 24, 2022. (*See id.* at 2.) On May 25, 2022, the Appeals Council granted Plaintiff's request for more time, providing an extension of 25 days to submit more information. (*See id.* at 60–61.) On April 24, 2023, the Appeals Council denied Plaintiff's request for review and affirmed ALJ Allard's decision, at which time ALJ Allard's decision became the final decision of the Commissioner. (*See id.* at 1.) Having exhausted her administrative remedies, Plaintiff filed a civil action in the United States District Court for the District of New Jersey seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). (*See* ECF No. 1 at 1.)

---

[2] ALJ Allard found that Plaintiff's work as a case aid was "performed within the past fifteen years; was of long enough duration to allow . . . [Plaintiff] to fully learn all the duties of the job; and was performed at the level of substantial gainful activity." (*Id.* at 101.)

## II.        STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. *Id.*; *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.       THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSDI to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSDI. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits their physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairments are equal in severity to, or meet, those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *See id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *See Williams v. Sullivan*, 970 F.2d, 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. § 404.1520(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at Section 404.1527 (for claims filed before March 27, 2017) or Section 404.1520c (for claims filed after March 27, 2017).

The claimant is not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him or her from doing so, an ALJ proceeds to the fifth and final step of the process. *See id.* The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523. Notably, an ALJ typically seeks the assistance of a vocational expert at this final step. *See id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *See Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146–47 n.5. An ALJ bears the burden of proof for the fifth step. *See Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine[3] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *See*

---

[3] The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 408–11 (2009) which concerned review of a governmental agency determination. The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

*Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 3:19-21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## IV. DECISION

### A. ALJ's Finding that Plaintiff's Mental Limitations Were Non-Severe

Plaintiff argues ALJ Allard's finding that her mental impairments were non-severe is an error amounting to harm and, therefore, warrants remand. (*See* ECF No. 6 at 26.) Plaintiff further argues that because ALJ Allard's decision did not consider the impacts of her "mental impairments on her ability to work," remand is warranted. (ECF No. 14 at 3.) While the Commissioner

8

acknowledges Plaintiff has "obsessive compulsive disorder . . . caus[ing] her to worry and ruminate" (ECF No. 11 at 6), this appeal primarily centers on Plaintiff's disagreement with ALJ Allard regarding the severity of Plaintiff's mental impairments. Indeed, Plaintiff's "theory of the case" rests on the position that the "combination of her impairments"—both physical and mental—means "she cannot even do sedentary work." (Tr. at 120.)

Plaintiff claims there is "uncontradicted evidence" of her "mental impairments being more than slight" and argues ALJ Allard failed to consider "these impairments in [Plaintiff's] RFC findings." (ECF No. 6 at 28–29.) Plaintiff cites this Court's discussion in *Jankowski v. Comm'r of Soc. Sec.*, Civ A. No. 3:19-cv-16424, 2020 WL 5810568 at *4 (D.N.J. Sept. 30, 2020), noting that plaintiffs "need only demonstrate something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." (ECF No. 6 at 27.) Therefore, because ALJ Allard recognized Plaintiff's "medically determinable mental impairments . . . do not cause more than minimal limitations in [her] . . . ability to perform basic mental work activities" (Tr. at 94), Plaintiff argues she carried her step two burden to show these mental impairments were severe.

To the extent Plaintiff asserts, either explicitly or by implication, a challenge to ALJ Allard's decision based on her failure to consider Plaintiff's mental limitations at step two, the Court finds any such failure would not be reversible error, as it well-established that the failure to identify a condition at step two is harmless error where other severe impairments are identified, and all medically determinable impairments are ultimately accounted for in the RFC. *See Richards v. Astrue*, Civ. A. No. 3:08–284, 2010 WL 2606523, at *6 (W.D. Pa. June 28, 2010) ("Where at least one impairment is found to be 'severe' and all limitations (including those resulting from 'non-severe' impairments) are reflected in the ultimate residual functional capacity determination,

9

any error committed at the second step of the sequential evaluation process can fairly be characterized as harmless."); *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015) (quoting *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)) ("Accordingly, not finding certain impairments severe at step two does not affect the ultimate disability determination. Where an ALJ finds in a claimant's favor at step two, 'even if he . . . erroneously concluded that some of [the plaintiff's] other impairments were non-severe, any error [is] harmless.'"); *Donna M. v. O'Malley*, Civ. A. No. 23-1760, 2024 WL 2130694, at *7 (D.N.J. May 13, 2024) ("Normally, when an ALJ finds at least one severe medical impairment at step two and continues onto the other steps, the ALJ's failure to consider other medically determinable impairments or find that a particular impairment to be non-severe is a harmless error.").

Plaintiff alternatively argues ALJ Allard's failure to find that her limitations were severe is an error amounting to harm "because if the ALJ found [Plaintiff]'s mental impairments severe and limited [Plaintiff] to simple and routine tasks as a result, the [vocational expert] indicated that this would be inconsistent with the ability to understand, remember, and carry out detailed instructions." (ECF No. 6 at 29 (citing Tr. at 158–59).) However, although ALJ Allard did find that Plaintiff's mental impairments were non-severe, she also found that Plaintiff only had the RFC to "understand and execute simple and routine tasks" (Tr. at 97), rather than detailed and complex ones. Notwithstanding this alleged omission from ALJ Allard's written decision of the vocational expert's testimony regarding understanding, remembering, and carrying out detailed instructions,[4] it appears—in the context of the vocational expert's testimony—ALJ Allard duly took Plaintiff's

---

[4] Even assuming, *arguendo*, that ALJ Allard's omission was erroneous, she clearly expressed that the vocational expert's testimony served only as a component of the basis for her decision, not the basis itself. (*See* Tr. at 119 (stating that her "decision is based on [her] independent review of [Plaintiff's] records, as well as [Plaintiff's] testimony and the testimony of . . . [the] vocational expert, who will be offering testimony about jobs in the national economy").)

10

several limitations into account. Therefore, the alleged omission does not amount to reversible error.

      **B.**     **ALJ's Alleged Omission of Non-Severe Mental Impairments When Formulating RFC**

Plaintiff argues ALJ Allard "was supposed to consider all of [Plaintiff's] impairments, severe and non-severe, when formulating [her] RFC." (ECF No. 6 at 29.) For support, Plaintiff cites *Curry v. Comm'r of Soc. Sec.*, No. 1:15-cv-07515, 2017 WL 825196 (D.N.J. Mar. 2, 2017), where an ALJ did not "specifically consider or address the impact of [a p]laintiff's mental impairments on her ability to work" (ECF No. 6 at 29), thereby leaving the court "to guess if" the "light exertional level" announced in the plaintiff's RFC "would truly be the result" (ECF No. 6 at 30), but for the ALJ's omission.

In turn, the Commissioner argues that "given the highly deferential standard of review applicable to this case, the Court should reject Plaintiff's arguments and affirm." (ECF No. 11 at 4.) The Commissioner further argues reviewing courts "must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." (ECF No. 16 at 11 (quoting *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021)).)

Although an ALJ is required to "consider all evidence before h[er]" and "give some indication of the evidence which [s]he rejects and h[er] reason(s) for discounting such evidence[,]" *Burnett*, 220 F.3d at 121, the indication of the ALJ's reasoning may be "implicit" in the decision. *See Smith v. Astrue*, 961 F. Supp. 2d 620, 652 (D. Del. 2013) ("Plaintiff is correct that the ALJ failed to explicitly assess the credibility of Mrs. Smith's testimony or assign her testimony a particular amount of weight. However, a fair reading of the ALJ's decision suggests that the ALJ did implicitly make these judgments."); *Diciano v. Comm'r of Soc. Sec.*, Civ. A. No. 1:18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) (finding that, although the RFC did not specifically

11

mention the "functions of sitting, standing, walking, lifting, carrying, or pushing . . . that does not mean the ALJ did not 'consider' those functions. This is because implicit in the finding that Plaintiff is capable of performing work at all exertional levels is that Plaintiff has no limitations in those areas"); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("We conclude that . . . the ALJ's discussion of the evidence in the record that implicitly supported Dr. Rohar's criticism provided a reasonable basis for the ALJ not to include a limitation in the RFC about Wise's inability to adapt to normal work pressures or changes."). Therefore, it is sufficient for the RFC determination to be supported by "substantial evidence" in the entire record, and it is unnecessary for the ALJ to engage in an explicit "function-by-function" analysis where the reasoning for the decision is implicit in the record. *See Glass v. Comm'r of Soc. Sec.*, Civ. A. No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("Contrary to Plaintiff's assertion otherwise, the . . . Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record."); *Donna R. v. Kijakazi*, Civ. A. No. 1:20-15449, 2022 WL 13009149, at *12 (D.N.J. Oct. 21, 2022) ("Although the ALJ did not expressly weigh Dr. Brown's opinions at step four, the ALJ's discussion at step two demonstrates that he implicitly discounted that examiner's opinions when assessing Plaintiff's limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace."); *Sheppard v. Comm'r of Soc. Sec.*, Civ. A. No. 1:19-18206, 2020 WL 5652450, at *5 (D.N.J. Sept. 23, 2020) ("Here, the RFC did not specifically reference the four non-exertional functions, but that does not mean the ALJ did not consider those functions, singularly or in combination with Plaintiff's other limitations from her various impairments.").

While ALJ Allard's discussion of Plaintiff's non-severe mental impairments when formulating her RFC is less than ideally clear, ALJ Allard's path to her RFC finding can be implicitly discerned because there are clear links between the opinion evidence ALJ Allard decided to credit and the ultimate RFC findings. *Cf. Garland*, 141 S. Ct. at 1679. Although this Court would advise ALJs to more explicitly incorporate discussion of non-severe impairments when formulating a plaintiff's RFC, ALJ Allard did note she "considered several other factors in assessing the consistency of the [Plaintiff's] subjective complaints" (Tr. at 99), beyond the principal evidence concerning Plaintiff's medically determinable severe impairments (*see id.* at 99–100), when formulating Plaintiff's RFC, including Plaintiff's "allegations of psychological . . . symptoms" and "neurological findings." (*Id.* at 100.) Accordingly, remand is not necessary on account of this alleged issue.

C.     **ALJ's Alleged Improper Evaluation of the Opinion Evidence**

Plaintiff argues that because ALJ Allard "failed to provide a logical and accurate bridge from the evidence to the rejection of the consistent opinion evidence" (ECF No. 6 at 33), remand is warranted. The Court disagrees.

Plaintiff argues "there is no requirement of psychiatric hospitalization before a person can be found to have limiting mental impairments" and, by suggesting so, "the ALJ . . . unfairly and unreasonably increased Rausch's burden of proof." (ECF No. 6 at 31.). Plaintiff also points to *Otra v. Comm'r of Soc. Sec.*, Civ A. No. 2:15-cv-6061, 2016 WL 6304437 at *6 (D.N.J. Oct. 25, 2016), where this Court explained that an "ALJ['s] merely cit[ing] . . . Plaintiff's daily activities . . . did not adequately explain [the ALJ's] decision to discount Dr. Fusman's opinion, and the Court cannot offer meaningful review of this issue." In exchange, the Commissioner argues ALJ Allard

13

"was correct to consider the type of treatment Plaintiff received, which appears to be limited only to medication[5] and some therapy, when assessing these findings." (ECF No. 11 at 18.)

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making a[n] [RFC] determination, the ALJ must consider all evidence before h[er]," and, although the ALJ may weigh the credibility of the evidence, she must "give some indication of the evidence which [s]he rejects and h[er] reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

A fair reading of the ALJ's decision shows that, while ALJ Allard's bridge may be want for details, it is neither illogical nor inaccurate. To the contrary, ALJ Allard repeatedly stressed that Plaintiff's "self-reported activities of daily living"—including taking care of an adult child with autism (*see* Tr. at 95), preparing meals, driving, taking care of her dog, exercising "4 to 5 days a week and report[ing] that she is able to walk half a mile every day," her ability to "lift or carry 20 pounds," *inter alia*—were inconsistent "with her allegations of psychological and medical symptoms." (*Id.* at 99–100.) Further, ALJ Allard identified that Plaintiff's "statements regarding the duration, frequency, and intensity of her symptoms are generally not supported by the medical evidence" (*Id.* at 99.)

To that end, while ALJ Allard took issue with Dr. Friedman's analysis "not provid[ing] a function-by-function assessment," she decided they nevertheless merited credibility because his findings were "somewhat consistent with the overall record, which shows that the claimant

---

[5] During the hearing on October 13, 2021, Plaintiff testified she takes Effexor, an anti-depressant, to address both her physical and mental impairments. (Tr. at 135 ("The Effexor is nice because I do have you know, anxiety too. We figured that is kind of a catch[-]all.").)

consistently had normal mental status findings on exam." (*Id.* at 95.) According to the Commissioner, Dr. Friedman's psychological examination of Plaintiff assessed that "there were no signs of a thought disorder" (ECF No. 11 at 9); however, Plaintiff's "short term memory was mildly impaired . . . and her working memory and concentration was impaired." (*Id.*) Dr. Friedman ultimately concluded Plaintiff showed "symptoms consistent with generalized anxiety disorder, obsessive compulsive disorder, and learning disorder." (*Id.*)

Moreover, ALJ Allard acknowledged that "state agency psychological consultants found that the claimant has a moderate limitation in all functional domains." (Tr. at 95.) However, ALJ Allard concluded the state agency psychological consultants' findings were not persuasive because: (1) Plaintiff had "no psychiatric hospitalizations," (2) "had normal mental status findings aside from difficulty with concentration and working memory at the consultative exam," and (3) the findings were "inconsistent with the overall record," namely Plaintiff's ability "to care for an adult child with Autism and perform her activities of daily living." (*Id.*)

Regarding Ms. Alvarado's assessment, ALJ Allard found her findings "unsupported because [she] is not an acceptable medical source and [because] . . . [the] questionnaire was created by the [Plaintiff's] representative."[6] (*Id.* at 95.) ALJ Allard also took issue with Ms. Alvarado's findings being "overly broad and restricted" and "not provid[ing] a function-by-function assessment." (*Id.*)

Coupling all the opinion evidence with Plaintiff's subjective "statements concerning the intensity, persistence, and limiting effects" of her medically determinable impairments, ALJ Allard concluded Plaintiff's medically determinably impairments "could reasonably be expected to cause

---

[6] Despite Plaintiff's initial claims during her testimony, ALJ Allard noted Ms. Alvarado was a social worker, not a medical doctor. (*See* Tr. at 155 ("She identifies herself as an MSW and an ACSW which I believe refers to social worker.").)

15

the alleged symptoms," but that nevertheless, the subjective extent of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 98.) Thus, ALJ Allard has adequately explained why certain opinion evidence—like Ms. Alvarado's, for instance—was discounted in the context of all the medical evidence and other evidence in the record. Therefore, this Court is able to offer meaningful review of this issue. Accordingly, ALJ Allard's treatment of the opinion evidence does not raise reversible error.

### D. ALJ's Alleged Improper Fragmentation of Plaintiff's Impairments

Plaintiff argues ALJ Allard "failed to provide more than conclusory statement[s] regarding consideration of the combination of all of [Plaintiff]'s impairments." (ECF No. 6 at 34.) As mentioned above, Plaintiff's theory of the case rests on this idea of fragmentation (*see* Tr. at 120); that is, if ALJ Allard did not fragment Plaintiff's medically determinable impairments from her non-severe mental impairments, Plaintiff would have been found disabled within the meaning of the Act. (*See* ECF No. 6 at 33–34.)

Plaintiff further argues that the Third Circuit has recognized that "where an ALJ fails to properly consider all the relevant and probative evidence, the Court should not substitute its own analysis of the record in search for substantial evidence to support the ALJ's decision." (ECF No. 6 at 26 (citing *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001)).) Additionally, Plaintiffs adds, an "'ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization." (ECF No. 14 at 5 (citing *Keiderling v. Astrue*, Civ. A. No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)).)

However, the Commissioner argues that "where the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so" and,

16

therefore, "no further discussion [i]s required . . . [because] there [i]s no reason to believe the ALJ did not consider Plaintiff's impairments in combination." (ECF No. 11 at 20.)

The Court finds ALJ Allard properly complied with 20 C.F.R. § 404.1526,[7] and her alleged fragmentation of Plaintiff's severe and non-severe impairments does not call for remand. Not only were ALJ Allard's RFC findings made "[a]fter careful consideration of the entire record" (Tr. at 97; *see also* Tr. at 119 (ALJ Allard stating that her "decision is based on [her] independent review of [Plaintiff's] records, as well as [Plaintiff's] testimony and the testimony of . . . [the] vocational expert, who will be offering testimony about jobs in the national economy")), but also she acknowledged that Plaintiff's impairments were evaluated "singly and *in combination*." (*Id.* at 94 (emphasis added); *see also* ECF No. 11 at 12 (quoting 20 C.F.R. § 404.1522(a)) (arguing ALJ Allard "reasonably concluded . . . Plaintiff did not have a 'severe' mental impairment . . . [because] an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").) Accordingly, ALJ Allard provided more than conclusory statements regarding Plaintiff's impairments because she both explicitly and implicitly evaluated all of Plaintiff's non-severe mental impairments before discussing the Impairment List at step three. Therefore, ALJ Allard's alleged fragmentation of Plaintiff's impairments does not present reversible error.

---

[7] Where—as here—a plaintiff has more than one impairment, the ALJ must consider whether the combination of impairments is equal to any of the impairments listed in the Impairment List. *See* 20 C.F.R. §§ 404.1526(b)(3), 404.1520(a)(4)(iii); *cf.* 20 C.F.R. § 404.1523.

## V. CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Allard erred in determining Plaintiff was not disabled under the Social Security Act. Therefore, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.


Date:  September 25, 2024                                */s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        UNITED STATES DISTRICT JUDGE